# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| MARTIN RANDAL CHAMPION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 7:19-cv-00055-JEO |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Plaintiff Martin Randal Champion appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability insurance benefits ("DIB") under the Social Security Act. (Doc. 1).[1] Mr. Champion timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review. For the reasons discussed below, the Court finds that the Commissioner's decision is due to be affirmed.[2]

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

[2] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

## I. Procedural History

Mr. Champion was forty-seven years old at the time of the decision in this case. He completed the tenth grade in high school, but obtained his GED later. His past work experience includes as an electrician and maintenance electrician. (R. 57).[3] He alleges that he is unable to work because of several medical conditions, including bipolar disorder, social phobia, generalized anxiety disorder, degenerative changes of the lumbar spine, status post-cervical fusion at C6-7, and restless leg syndrome. (R. 17).

Mr. Champion initially allege he became disabled on December 18, 2013. (R. 181-84). He amended that date to March 22, 2014.[4] (R. 14 5). When the Social Security Administration ("SSA") denied his claims initially, (R. 15), Mr. Champion requested a hearing before an Administrative Law Judge ("ALJ"), (*id*.). A video hearing was held on November 29, 2017. (*Id*.). Following the hearing, the ALJ denied his claim. (R. 16-27). Mr. Champion appealed the decision to the Appeals Council ("AC"). After reviewing the record, the AC declined to further review the ALJ's decision. (R. 1-6). That decision became the final decision of the Commissioner and is now ripe for review. *See Frye v. Massanari*, 209 F. Supp. 2d

---

[3] References to "R.__" are to the electronic record found at documents 8-1 to 8-11. The page references are to the numbers in the lower right-hand corner of each document.

[4] He also received a prior unfavorable decision for the period of July 15, 2009, through March 21, 2014. (R. 15, 68-77).

1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).

## II. Statutory and Regulatory Framework

To establish his eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Plaintiff's disability status expired on June 30, 2014. (R. 17). Thus, he had to show that he was disabled before that date to be eligible for DIB. (R. 203). Accordingly, this Court's review is for the period from March 22, 2014, through June 30, 2014.

The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 416.920(b). First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* "Under the first step, the claimant has the burden to show that []he is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[5] If the

_____

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. At the first step, the ALJ determined Mr. Champion did not engaged in substantial gainful activity during the relevant period. (R. 17).

If a claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(c) & 404.1522. An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3). Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).[6] "[A]n impairment can be considered as not severe only if it is a slight

---

[6] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b).

abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of his individual impairments alone is disabling. 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 416.912(a). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. *Id.* at § 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined Mr. Champion has the following severe impairments: degenerative changes of the lumbar spine, anxiety, status post-cervical fusion at C6-7, restless leg syndrome, and bipolar disorder. (R. 17).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii) & (d). The claimant bears the burden of proving his impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled. 20 C.F.R § 404.1520(a)(4)(iii) and (d). At the

third step, the ALJ determined Mr. Champion did not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings. (R. 18-21).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). A claimant's RFC is the most he can do despite his impairment. *See id.* at § 404.1520. At the fourth step, the Commissioner will compare the assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 416.945(a)(4)(iv). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). The claimant bears the burden of proving that his impairment prevents him from performing his past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing his past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f).

Before proceeding to the fourth step, the ALJ determined Mr. Champion has the RFC to perform a limited range of light work. (R. at 21). More specifically, the

ALJ found Mr. Champion had the following limitations with regard to light work, as defined in 20 C.F.R. § 404.1567(b)[7]:

> Should have a sit/stand opinion up to forty-five minutes at a time, less if needed. No operation of foot controls, climbing ladders, ropes or scaffolds. No excessive vibration, unprotected heights or hazardous machinery. Limited to unskilled work with the ability to attend and conference for two-hour periods at a time. Work that can be around coworkers throughout the day, but with only occasional interaction with coworkers. Contact with the public is not an essential part of the job duties.

(R. 21). At the fourth step, the ALJ determined Mr. Champion was unable of performing his past relevant work. (*Id.* at 24-25). She then determined that he had the ability to perform other jobs that were available. (*Id.* at 25). According, the ALJ concluded Mr. Champion had not been under a disability as defined by the SSA since December 18, 2013. (R. 26).

---

[7] Light work is defined by the regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for

determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

Mr. Champion makes two arguments in favor of remand. First, he contends the ALJ failed to accord proper weight to the opinion from his treating psychiatrist, Dr. Patrick Bruce Atkins. (Doc. 12 at 3-9). Second, Mr. Champion argues the ALJ improperly evaluated his physical complaints. (*Id*. at 10-15). The Court addresses each argument below.

### A. Treating Psychiatrist Opinion

As just noted, Mr. Champion first argues that the ALJ erred in discounting the opinion of Dr. Atkins, his "long-time psychiatrist." (*Id*. at 3-9). Specifically, he contends that the ALJ improperly rejected Dr. Atkins opinion without showing good cause. (*Id*.). The Commissioner responds that the ALJ properly evaluated Dr. Atkins's opinions. (Doc. 13 at 7-12).

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). The Eleventh Circuit Court of Appeals has stated that "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In rejecting a medical opinion, the ALJ must clearly articulate his or her reasons for doing so.

Dr. Atkins began treating Mr. Champion on September 8, 2014, and continued through November 2016.[8] (R. 416-40). In November 2015, Dr. Atkins completed a "Medical Source Statement (Mental)" that had been provided by Mr. Champion's counsel. (R. 444-46). As noted by the Commissioner,

> The form explained, "It is essential that your answers be based on your estimate of the claimant's *current* psychiatric/psychological impairment...." Dr. Atkins circled preprinted responses to indicate mild to marked mental limitations and circled "yes" to indicate Plaintiff's "impairment(s) caused limitations that have lasted or can be expected to last for 12 months or longer at the level of severity indicated." …. Under "Comments," he wrote, "bipolar disorder," "social anxiety disorder," and "gen. anxiety disorder."

(Doc. 13 at 10 (citing R. 444-46) citations omitted and italics added).

The ALJ gave no weight to Dr. Atkins's November 2015 Medical Source Statement because it was "too far removed from the date last insured to be reasonably considered as to whether [Mr. Champion] was disabled prior to June 30, 2014." (R. 24). The Court finds there is substantial evidence in the record supporting this conclusion.

First, the medical records close in time to the relevant period support the ALJ's conclusion. Mr. Champion reported to Dr. Kevin Katona during a follow-up

---

[8] The Commissioner states in his brief that the relationship lasted only until September 2015. (Doc. 13 at 10). However, the record includes treatment notes from Dr. Atkins up until November 2016. (R. 543-566).

visit on August 5, 2014, that his fatigue and anxiety were improving and he was doing well. (R. 353). The following month, Dr. Atkins observed that while Mr. Champion was still suffering from mental difficulties, he had fair insight, no memory deficits, normal concentration, and fair insight and judgment. (R. 437). Dr. Atkins noted in October 2014 that Mr. Champion was coping better, did not get as angry, did not overact, and had more "pep." (R. 433). His examination concluded that his mood is improved, his affect is broad, and his thought processes are rational, logical, and goal oriented. (*Id*.). In November 2014, Dr. Atkins noted Mr. Champion's mood as calm, his affect as broad, and his thinking as rational, logical, and goal-directed. (R. 431). He also noted that Mr. Champion denied any anger issues, reporting that Mr. Champion stated, "I haven't had any anger issues;" "He 'hasn't stewed about anything for a while and it is so nice;'" and "He feels more like himself and he doesn't lose control." (*Id*.). By March 2015, Mr. Champion reported that he was "doing well." (R. 425). Dr. Atkins noted that Mr. Champion was stable and his mood is bright, his affect is broad, and his thought processes are rational, logical, and goal-oriented. (*Id*.). Dr. Atkins also noted that Mr. Champion stated that he had recently gone shooting, he had been taking his medications and they were working for him. (*Id*.). On June 29, 2015, Dr. Atkins noted that Mr. Champion reported, "Overall, I have been pretty decent." (R. 421). By December 2, 2015, Mr.

Champion reported that he was doing good. (R. 564). He was active and his mood was stable. (*Id.*).[9]

Second, other medical records support the ALJ's conclusion, including the following: Oct. 10, 2007 (Dr. William Standeffer-noting "[m]ood and affect is appropriate") (R. 293); Oct. 22, 2007 (Dr. Standeffer-same) (R. 294); January 11, 2008 (Dr. Standeffer-same) (R. 288); Mar. 7, 2008 (Dr. Standeffer-same)(R. 302); Apr. 11, 2008 (Dr. Standeffer-same) (R. 296); May 9, 2008 (Dr. Standeffer-same)(R.298); June 17, 2008 (Dr. Standeffer-(same) (R. 280); July 30, 2008 (Dr. Standeffer-same)(R. 300); Aug. 27, 2008 (Dr. Standeffer-same) (R. 301); Sep. 9, 2009 (Dr. Chester Boston-same) (R. 284); Sep. 14, 2009 (Dr. Boston-same)(R.303); Sep. 16, 2009 (Dr. Boston-same) (R. 289); Sep. 30, 2009 (Dr. Boston-same) (R. 284); Oct. 6, 2009 (Dr. Wesley Spruill-patient denies "nervousness, anxiety, mood swings, depression") (R. 460); October 14, 2009 (Dr. Boston-"[m]ood and affect are appropriate") (R. 278); Oct. 28, 2009 (Dr. Standeffer-same) (R. 292); April 19, 2010 (Dr. Boston-same) (R. 287); Aug. 23, 2010 (Dr. Boston-same) (R. 282);  Aug. 14, 2012 (Dr. Bryan Givhan-"alert and oriented x3") (R. 306); Sep. 7, 2011 (Dr. Katona-denies depression, anxiety, stress, mood swings, irritability, poor focus and "Alert & Oriented x3")(R. 393-94); Jan. 31, 2012 (Dr. Katona-"Alert & Oriented x3") (R.

---

[9] The Court does note that by October 20, 2016, Mr. Champion complained to Dr. Atkins that he was "having a hard time."  (R. 547). He also complained of depression on November 17, 2016, but noted that he was taking "every opportunity there is to work but they were few and far between." (R. 544).

388); Feb. 13, 2012 (Dr. Spruill-"Denies: Nervousness, anxiety, mood swings, depression") (R. 476-79); Apr. 5, 2012 (Dr. Spruill-same) (R. 490-92); Apr. 12, 2012 (Dr. Spruill-same) (R. 497-500); May 3, 2012 (Dr. Spruill-same) (R. 504-07); Sep. 24, 2012 (Dr. Katona-complains of depression and anxiety, but denies stress and irritability & "Alert & Oriented x3") (R. 381-82); Oct. 11, 2012 (Dr. Katona-positive for depression, but denies anxiety, stress, mood swings, irritability, poor focus; "Alert & Oriented x3") (R. 379); Apr. 17, 2013 (Dr. Katona-positive for depression and anxiety, but denies stress, mood swings, irritability, poor focus; "Alert & Oriented x3") (R. 373); May 8, 2013 (Dr. Katona-"Alert & Oriented x3") (R. 371); Jun. 20, 2013 (Dr. Katona-complains of depression and anxiety, denies stress and irritability & "Alert & Oriented x3") (R. 368); Sep. 25, 2013 (Dr. Katona-"Alert & Oriented x3") (R. 365); Feb. 6, 2014 (Dr. Katona-"Alert & Oriented x3") (R. 362); Jun. 16, 2014 (Dr. Katona-Patient positive for depression, but denies anxiety & stress, "Alert & Oriented x3") (R. 358-59); Jul. 7, 2014 (Dr. Katona- Patient positive for depression and anxiety, "Alert & Oriented x3") (R. 356); Aug. 5, 2014 (Dr. Katona positive for anxiety, "Alert & Oriented x3") (R. 354); Oct. 10, 2014 (Dr. Katona- denies depression, anxiety, stress, mood swings, irritability, poor focus, "Alert & Oriented x3") (R. 390-91); Jan. 5, 2015 (Dr. Katona-"alert and orientedx3") (R. 348); Jan. 12, 2015 (Dr. Atkins-"mood has been more stable overall" and "[h]e is overall pleased with treatment") (R. 427); Feb. 26, 2015 (Dr. Katona-positive for

anxiety, but "alert and orientedx3") (R. 346); May 5, 2015 (Dr. Katona-positive for anxiety, but denies depression, stress, mood swings, irritability, poor focus, and "alert and orientedx3") (R. 343-44); Jul. 6, 2015 (Dr. Warren Holley-"alert and oriented x3" & "Mood and Affect: normal") (R. 317); Aug. 3, 2015 (Dr. Katona-positive for depression and anxiety, but denies depression, stress, mood swings, irritability, poor focus; "alert and oriented x3") (R. 339-40); Sep. 24, 2015 (Dr. Atkins-patient reports he is doing pretty well, he is taking his medications, Zoloft has helped, no anger outbursts) (R. 417). This evidence demonstrates Champion's stability, his overall positive response to medication and treatment.

Third, the evidence regarding Mr. Champion's daily activities also supports the RFC as determined by the ALJ. His activities include being able to prepare limited meals, some basic household chores (e.g., dishwashing, washing clothes, vacuuming, sweeping), necessary grocery shopping, and managing his finances. (R. 20, 23, 44-45, 236-38).

In summary, the Court concludes that the ALJ has shown "good cause" for assigning no weight to the mental health source statement signed by Dr. Atkins. First, the mental health source statement was completed almost 18 months after the date last insured. Second, it was an assessment of Mr. Champion's *current* condition in November 2015. Even to the extent the form states his "impairment(s) caused limitations that have lasted or can be expected to last for 12 months or longer" that

does not indicate Mr. Champion was disabled prior to June 30, 2014.[10]  Third, Dr. Atkins' opinions on the form are inconsistent the medical and non-medical evidence in and around the relevant period, as discussed above and by the ALJ.  (*See* R. 22). Thus, the Court finds that the determination of the ALJ is supported by substantial evidence.

### B.  Application of the Pain Standard

Mr. Champion's next argument concerns the adequacy of the ALJ's evaluation of his pain complaints.  (Doc. 12 at 10-15).  He contends the ALJ did not "articulate with any degree of specificity her reasoning behind dismissing [his] testimony in regards to the impact his pain has on his daily functioning."  (*Id.* at 10-11).  He argues, "Clearly, Plaintiff's physical limitations prohibit his return to his past work" and his physical RFC "is limited to less than the full range of sedentary unskilled work activity.  Thus, a finding of disabled is warranted under 201.00(h)(3) of the Medical-Vocational Guidelines."  (*Id*. at 12 & 14).  He further argues that the prior finding of ALJ William Lawson that he (Mr. Champion) could perform "no more than unskilled work at a limited range at a sedentary level is correct,"[11] and

---

[10] Even if the Court assumes that Dr. Atkins meant Mr. Champion had the limitations for the last 12 months, that would only be November 2014, five months after the insured period expired.

[11] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking

warrants a finding of disabled. (*Id*. at 3 & 12). Lastly, he argues that he "is unable to adequately maintain the necessary persistence or pace required to engage in basic work activities." (*Id*. at 15). The Commissioner counters that "the ALJ properly evaluated [Mr.] Champion's subjective complaints and the prior determination of another ALJ does not undermine the present ALJ's physical RFC fining for the instant case." (Doc. 13 at 15).

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate their intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the

---

and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how his symptoms affect him. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ summarized Mr. Champion's testimony at the administrative hearing as follows:

> [Mr. Champion] alleged that the primary reason he does not work is due to his psychiatric issues and his difficulty getting along with others. [He] also testified that physically, his lower back caused him the most difficulties, and he rated is pain level associated with his lower back at 7/10, and further testified that he has had this pain level since he was 17 years old. Furthermore, [he] alleged that he has shooting pain in his legs and hip, which has also been ongoing since he was 17 years old. Additionally, [he] alleged that he has numbing in his les, which started five years prior to the hearing, and that his fracture of his foot in December 2012 affects his ability to walk. Furthermore, [he] testified that he could not stand longer than 30 minutes, walk more than 50 yards, sit longer than 30 minutes, or lift more than 20 pounds.

> Nevertheless, [he] testified that he does not have anyone help him or take care of him and that he does the cooking, shopping, dishes, laundry, vacuuming, sweeping, takes out the garbage, cleans the house, and does some yard work. Finally, [he] testified that he would probably be able to work if he did not have any mental limitations.

(R. 23). The ALJ found that Mr. Champion's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 25).

The Court finds that the ALJ's determination is supported by substantial evidence for a number of reasons. First, while Mr. Champion does suffer degenerative changes of the lumbar spine and status post-cervical fusion at C6-7, x-rays from 2012 show only some chronic issues, but no acute fracture or subluxation and that medical observations following his surgery show he had a full range of motion, no neurological focal deficit, no edema of the lower extremities, and no joint or bony abnormalities. (R. 305, 356, 382, 399).

Second, to the extent Mr. Champion alleges his December 2012 foot fracture limits his ability to walk, the record demonstrates that his foot has improved. In December, Mr. Champion sustained a closed fracture of the second metatarsal bone. His foot was placed in a boot. "By February 2013, there was increased trabeculation consistent with healing, and in March 2013, the pain and swelling was minimal and

the fracture appeared stable to manipulation, so the boot was removed and [he] returned to wearing a shoe." (R. 23). By April 2013, he reported no gait abnormality. (R. 23, 373).

Third, his restless leg syndrome symptoms improved by June 2013. (R. 23, 367). By September 2013, it was deemed to be chronic, but stable. (R. 23, 364). Dr. Katona reported that Mr. Champion was doing better. (R. 365). His February, June, and November 2014 visits indicated Mr. Champion was doing well and the restless leg syndrome was deemed to be stable. (R. 23, 350-51, 357, 361). Evidence demonstrating the lack of severity of the syndrome includes the fact that Mr. Champion was merely provided with a handout on the subject during his November visit. (R. 351). Additionally, as noted by the ALJ, "no medical provider [has] placed any limitations on [Mr. Champion] as a result of this diagnosis, [he] was just given a restless leg syndrome handout…." (R. 23 (citation omitted)).

Fourth, the determination of the ALJ is further supported by other evidence in the record. For example, Mr. Champion testified at the administrative hearing that he could lift about 20 pounds. (R. 44). This is consistent with the requirements for an ability to perform "light work." Additionally, Dr. Atkins noted in his notes of November 2014 that Mr. Champion had been doing some tractor work digging a pond. (R. 23, 431).

To the extent Mr. Champion asserts that the ALJ in this instance should have relied on the prior finding of ALJ Lawson that he (Mr. Champion) could perform "no more than unskilled work at a limited range at a sedentary level is correct," the Court disagrees. By way of background, Judge Lawson determined on March 21, 2014, that Mr. Champion's RFC finding for the period from July 15, 2009 through March 21, 2014, included a limitation to sedentary work. (R. 77). The ALJ in this instance noted that ruling, but determined that because Mr. Champion "could lift up to 20 pounds and medical examinations showed that [he] had normal range of motion with no neurological deficits, a light range of work is appropriate." (R. 23).

Mr. Champion's prior unfavorable decision by Judge Lawson, which adjudicated a claim for a prior period, is not dispositive on the present claim. *See McKinzie c. Comm'r of Soc. Sec*, 362 F. App'x 71, 73 (11th Cir. 2010) (the ALJ did not err in declining to give preclusive effect or defer to a prior finding when considering an unadjudicated time period). In this case, the ALJ properly considered the prior ruling and the evidence before her and correctly concluded that an RFC including a light range of work is appropriate. (R. 23). Nothing in this record undercuts this finding. Mr. Champion has offered nothing to challenge this determination.

Lastly, Mr. Champion argues in conclusory fashion that he "is unable to adequately maintain the necessary persistence or pace required to engage in basis work activities." (Doc. 12 at 15). The ALJ discussed this contention and stated:

> …. Although [Mr. Champion] reported on his function report that he cannot concentrate well enough to follow even the simplest instructions sometimes, he also reported that nobody takes care of him and that he has the independent ability to prepare meals, do light cleaning, do laundry, drive and go grocery shopping, and manage his financials without assistance…. At the hearing, [Mr. Champion] alleged that he has constant pain in his lower back, which could interfere with his concentration. However, [he] also confirmed that he does not have anyone help him and that he does the cooking, shopping, dishes, laundry, vacuuming, sweeping, takes out the garbage, cleans the house, and does some yard work.

(R. 20). As with the last issue, nothing in this record undercuts this finding. Mr. Champion has offered nothing to challenge this determination. Substantial evidence supports the ALJ's determination that Mr. Champion is not disabled.

## V. Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, the Court finds that the ALJ's decision is due to be **AFFIRMED**. A separate order will be entered.

**DATED** this 9th day of April, 2020.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge